UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-103 (ECT/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **GOVERNMENT'S POSITION** |
| v. | ) **WITH RESPECT TO** |
| | ) **SENTENCING** |
| STEVEN JOHN SOKEL, | ) |
| | ) |
| Defendant. | ) |

The United States of America, through undersigned counsel, recommends the Court sentence Sokel to 262 months' imprisonment and supervised release for 5 years. As discussed below, that sentence is sufficient but not greater than necessary to comply with 18 U.S.C. § 3553(a) and ensure justice is served.

## **RELEVANT FACTS**

The government agrees with the facts from the Offense Conduct section of the presentence report, (ECF No. 55 at ¶¶ 7-13), and the factual basis from the plea agreement. (ECF No. 44 at ¶ 2).

Beginning in April 2022, Sokel, a resident of Blooming Prairie, Minnesota, communicated with the mother (Mother 1) of the victim, Minor Female 1, via the internet. (ECF No. 55 at ¶ 8). Mother 1 and Minor Female 1 lived in Thailand, and Minor Female turned 6 in September 2022. (ECF No.

55 at ¶ 8). The electronic communications continued through September 2022, when Sokel flew to Thailand. (ECF No. 55 at ¶¶ 8, 10).

In those communications, Sokel repeatedly solicited Mother 1 to send him sexually explicit images of Minor Female 1 and sent other explicit communications. (ECF No. 55 at ¶ 8). Sokel's solicitations included such requests as:

> "[W]ill you please send me nude pictures of [Minor Female 1] standing up. In the light;"
>
> "I really like the nude pictures u give me of [Minor Female 1];"
>
> "The next nude picture i want is of her laying on her bed legs spread apart wide so i can see inside her vagina;"
>
> "I don't lie i want to make love with you and your daughter;"
>
> "No u not lost me. But like I said I will make love with you. But I also want to sleep with [Minor Female 1] nude;" and
>
> "So if she is only 6 years old what is the big deal with sending me any kind of pictures I want of her nude body u need to get over yourself."

(ECF No. 55 at ¶ 8).

Mother 1 complied with Sokel's requests on several occasions, sending him photographs of Minor Female 1 engaging in sexually explicit conduct involving the lascivious exhibition of her genitals and pubic area. (ECF No. 55 at ¶ 9).

On September 1, 2022, Sokel flew to Thailand and stayed with Mother 1 and Minor Female 1 for almost a month. (ECF No. 55 at ¶ 10). While there,

Sokel produced five visual depictions of Minor Female 1 engaging in sexually explicit conduct—specifically, lascivious exhibition of her genitals and public area. (ECF No. 55 at ¶ 10). Minor Female 1 was in Sokel's care, custody, and supervisory control when Sokel produced the visual depictions. (ECF No. 55 at ¶ 10).

Sokel left Thailand on September 29, 2022, and had a layover in Abu Dhabi, United Arab Emirates, on his way back to the United States. (ECF No. 55 at ¶ 11). The Abu Dhabi airport has a U.S. Customs and Border Protection (CBP) preclearance facility for passengers flying to the United States. (ECF No. 11). After finding items like sexual pleasure devices, handcuffs, and condoms in Sokel's luggage, CBP officers performed a border search of Sokel's electronic devices. (ECF No. 55 at ¶ 11). They found the aforementioned five visual depictions on Sokel's password-protected laptop and seized his other electronic devices. (ECF Nos. 30 at 7, 35 at 4, 55 at ¶ 11). Forensic analysis found more visual depictions of minors engaging in sexually explicit conduct on some of the other devices, including his personal camera. (ECF No. 55 at ¶ 11). That analysis showed Sokel produced images of Minor Female 1 on two visits to Thailand, one when Minor Female 1 was an infant and one in September 2022. (ECF No. 55 at ¶ 13).

Before Sokel arrived home, agents executed a search warrant at his apartment and seized more electronic devices. (ECF No. 55 at ¶ 12). An

associate of Sokel's was at the apartment when police arrived and was using his computer. (ECF No. 55 at ¶ 12). Police obtained Skype messages between Sokel and his associate that further detailed Sokel's abuse of Minor Female 1. (ECF No. 55 at ¶ 12).

On April 18, 2022, Sokel was charged by indictment with two counts of sexual exploitation of children in violation of 18 U.S.C. § 2252(c)(1), (c)(2)(A), and (e) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(4)(B) and (b)(2). (ECF No. 1). Pursuant to a plea agreement, Sokel pled guilty to Count 1 on July 26, 2024. (ECF No. 44). Consistent with that agreement, the government recommends the Court sentence Sokel to 262 months in prison and supervised release for 5 years.

## ARGUMENT

**I.     Legal Standard**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested

by a party." *Gall*, 552 U.S. at 49–50; 18 U.S.C. § 3553(a). The § 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

## II.   The U.S. Sentencing Guidelines Calculations

The government does not dispute the Guidelines calculations in the PSR, and the parties agree that Sokel's criminal history category is I, but the plea agreement contemplates a lower sentencing range than the PSR. The PSR applies a five-level enhancement under U.S.S.G. § 4B1.5 (repeat and dangerous sex offender against minors), resulting in a Guidelines range of 360 months in prison. In the plea agreement, the government noted its belief that the enhancement could apply but agreed not to seek or prove it in exchange for Sokel's rapid acceptance of responsibility. The government stands by the plea agreement and does not seek that enhancement.

If that enhancement is not applied, Sokel's Guidelines range is 210-262 months in prison. As discussed below and consistent with the plea agreement, the government recommends a sentence to 262 months' imprisonment.

## III. The Section 3553(a) Factors

The § 3553(a) factors—most importantly, the nature and circumstances of the offense, the need to protect the public, and warrant a prison sentence of 262 months.

### A. The nature and circumstances of the offense

The nature and circumstances of the offense are detailed above, and Sokel's offense is unquestionably serious. He solicited and paid Mother 1 to produce sexually explicit images of her daughter and send them to Sokel. He flew across the world to produce his own images of the girl. He possessed at least one more image of Minor Female 1 as an infant with her genitals visible. Sokel's solicitations to Mother 1 leave no doubt as to his intent—he intended to use these images of Minor Female 1 for his own sexual gratification. In short, his conduct was vile and deserves a commensurate sentence.

### B. The History and Characteristics of the Defendant

Sokel has mitigating factors in his history, and while the Court must consider them in determining an appropriate sentence, that consideration should only go so far. True, Sokel has significant health concerns—the Court is well aware of them from the hearing on the government's motion to revoke pretrial release.

But those conditions are only so mitigating, as they did not impair Sokel from soliciting Mother 1 for sexually explicit images of her daughter or flying

to Thailand to produce his own images. In fact, the Court has already noted the limited mitigation of Sokel's medical issues. In its order granting the government's motion, the Court was "not persuaded that Mr. Sokel's health concerns mitigate . . . risk of posing a danger to the community," as "Mr. Sokel was suffering from these medical problems . . . when he traveled internationally to Thailand, stayed there for three weeks," and committed the offense against Minor Female 1. (ECF No. 35 at 6).

In short, while Sokel's health and other mitigating issues identified in the PSR are part of his history and characteristics and must be considered by the Court, the mitigation only goes so far. Nothing in Sokel's background excuses using a six-year-old child for his sexual gratification.

### C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, Deterring Crime, and Protecting the Public

Deterring future offenses against children is an important consideration for the Court. The most certain way to deter Sokel is a lengthy prison sentence. Specific deterrence is important because Sokel, despite his many health issues, was so motivated to use Minor Victim 1 for his own sexual gratification that he flew across the world to produce sexually explicit images of a six-year-old child. Simply put, if Sokel is in prison, he can't molest children.

The recidivism risk is particularly great for offenders who produce child pornography. A longitudinal study of 341 convicted child molesters found that

for individuals who viewed deviant pornography (defined as pornography containing children and/or violence), the odds of sexual recidivism increased by 233% when compared with those who did not view deviant pornography. Kingston, et al., *Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders*, 34 Aggressive Behavior 341, 348 (2008). Such deviant forms of pornography "help shape an individual's fantasies, perceptions, rationalizations, and deeper core beliefs" and "fosters the progression toward re-offending, regardless of the earlier existence of historical risk factors." *Id*.

A significant sentence is also important as a general deterrent. General deterrence is the public response necessary to deter others from committing similar crimes. Indeed, general deterrence is "one of the key purposes of sentencing." *Ferguson v. United States*, 623 F.3d 627, 631-32 (8th Cir. 2010) (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)). General deterrence is even more important in child exploitation offenses. "The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." *New York v. Ferber*, 458 U.S. 747, 760 (1982). In *United States v. Goldberg*, the court discussed the goal of general deterrence:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

491 F.3d 668, 672 (7th Cir. 2007) (internal citations omitted).

If this is the goal for cases involving distribution of child pornography, that goal is equally, if not more, compelling for persons like Sokel, who solicited the production of, and personally produced after flying overseas, sexually explicit images of a child. The Court is in a position to send a strong message to offenders like Sokel who seek and derive sexual pleasure from children and document their exploitation. A sentence to 262 months' imprisonment is appropriate as an individual and general deterrent that will protect the public—namely, other children.

### IV. Supervised Release

"Supervised release is a unique method of post-confinement supervision," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991), that "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). It "is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994).

Rather, "congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *Johnson v. United States*, 529 U.S. 694, 708-09 (2000).

For most offenses, Congress authorized relatively short terms of supervised release. Class A felonies, for example, normally carry a term of no more than five years' supervised release. 18 U.S.C. § 3583(b)(1). Child exploitation crimes, though, fall into a discrete group of offenses for which Congress went further, mandating a minimum supervised release term of five years and authorizing a maximum term of life. 18 U.S.C. § 3583(k). This suggests that Congress saw a grave danger to public safety from individuals who seek to exploit children, one beyond the danger posed by a "typical" felon.

Indeed, the Guidelines urge district courts to impose the maximum supervised release term available for sex offenders like Sokel. *See* U.S.S.G. § 5D1.2(b). However, in this case, given Sokel's age and the length of the government's recommended prison sentence, a supervised release term of 5 years is appropriate. That term will ensure Sokel receives the services required to reenter society while protecting others.

V.  **Restitution**

Per the plea agreement, Sokel agreed to pay restitution to Minor Female 1. (ECF No. 44 at ¶ 15). Restitution is mandatory in this case. 18 U.S.C. § 2259(a). Minor Female 1 has not yet requested restitution. If Minor Female 1

makes that request before sentencing, the government asks the Court to consider that request pursuant to 18 U.S.C. §§ 2259 and 3663A. Regardless of whether Minor Victim 1 requests restitution, the Government asks the Court to find under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 that Minor Female 1 is a "victim of the defendant who was convicted of trafficking in child pornography," 18 U.S.C. § 2259(d)(1)(B), and order mandatory restitution of no less than $3,000 under 18 U.S.C. § 2259(b)(2) and no more than $50,000 under the terms of the plea agreement.

## CONCLUSION

For these reasons, the government recommends the Court sentence Sokel to 262 months in prison, a supervised release term of 5 years, and restitution as described above.

DATE: January 20, 2025　　　　　　　　　　LISA D. KIRKPATRICK
　　　　　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　　　　　*/s/ Campbell Warner*
　　　　　　　　　　　　　　　　　　　　　Campbell Warner
　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney