UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Docket No.: 24-103 (1) (ECT/TNL)

| | |
|---|---|
| United States of America, | |
| Plaintiff, | **DEFENDANT'S POSITION** |
| v. | **REGARDING SENTENCING** |
| Steven John Sokel. | |
| Defendant. | |

## INTRODUCTION

Defendant, Mr. Steven John Sokel, was born into the world with more obstacles than some people will face in their entire lifetime. Diagnosed with Jacob's syndrome and severe physical and cognitive disabilities, his life has been defined by challenges far beyond his control. Despite his profound needs, he never received all the help or support necessary to overcome them.

By humanizing Mr. Sokel in this memorandum, it is not intended to take away from the pain and suffering he caused the victim. He gives victim the acknowledgement of the pain caused, and hopes they find treatment and the peace.

## REQUESTED SENTENCE

For the reasons laid out in this memorandum in Sections II and III of the argument section of this memorandum, Mr. Sokel will request a substantial downward variance from his guideline sentence of 180 months and request the Court to recommend he carry out his sentence at a Federal Bureau of Prisons (BOP) medical facility. These requests are based

on the following: 1) Mr. Sokel's medical struggles which have shaped the direction of his life, 2) his need for medical treatment moving forward, and 3) his acceptance of responsibility. In light of these circumstances, a downward variance and placement at a BOP medical facility are not only appropriate but essential for justice tempered with compassion.

## LEGAL STANDARD

The Sentencing Guidelines should be the starting point for the district court when sentencing a person convicted of a federal crime. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Although the first step should be calculating the applicable sentencing range under the Sentencing Guidelines, the sentencing judge should not presume the sentencing range to be reasonable. *Gall*, 552 U.S. at 50. The Sentencing Guidelines are advisory, not mandatory. *United States v. Booker*, 543 U.S. 220, 245 (2005). The sentencing judge must make an individualized assessment based on the facts of each case. *Gall*, 552 U.S. at 50. Thus, the Sentencing Guidelines are but one factor the court should consider when determining whether a sentence achieves the purposes set forth in § 3553(a)(2). *Kimbrough*, 552 U.S. at 90.

The Supreme Court has reiterated this point, noting that "[o]ur cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," and that "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009).

In light of its "discrete and institutional strength[], a district court's decision to vary from the advisory guidelines may attract greatest respect when the sentencing judge 'finds a particular case outside the "heartland" to which the Commission intends individual Guidelines to apply.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 344 (2007)). A sentencing judge has greater familiarity with an individual case and individual defendant than the Commission or the appeals court and is "therefore 'in a superior position to find facts and judge their import under § 3353(a)' in each particular case." *Kimbrough*, 552 U.S. at 574 (quoting *Gall*, 552 U.S. at 597). In considering the § 3553(a) factors, "[a] district court is not required to recite each of the sentencing factors under 18 U.S.C. § 3553(a), as long as the record makes clear that they were considered." *United States v. Powills*, 537 F.3d 947, 950 (8th Cir. 2008) (citing *United States v. Hernandez*, 518 F.3d 613, 616 (8th Cir.2008)).

Under 18 U.S.C. § 3553(a) the Court shall impose a sentence "sufficient, but not greater than necessary" and shall consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from further crimes of the defendant; and

    d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established [by the Sentencing Commission in the Guidelines] ...

(5) Any pertinent policy statement [issued by the Sentencing Commission]

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

The § 3553(a) factors support a downward variance in Mr. Sokel's case.

While Mr. Sokel believes that all the factors weigh in favor of a sentence below the recommended guideline range, this request is particularly supported by his personal characteristics, history, and the need for the sentence imposed to reflect fairness and justice. His effort to seek the medical treatment he needs, his character, and his commitment to taking responsibility for his actions all warrant consideration of a reduced sentence.

## ARGUMENTS IN SUPPORT OF SENTENCING REQUEST

**I.    The U.S. Sentencing Guidelines Calculation.**

Mr. Sokel does not dispute the U.S. Probation Department's Guideline calculation, except for the application of the 5-level enhancement for being a repeat and dangerous sex offender against a minor under UMr. SokelG § 4B1.5. As outlined in the Objections by Defendant section of the PSR (Doc. 55) objections to the application of this

enhancement. Mr. Sokel joins with the Government's position and respectfully requests that the Court find the enhancement does not apply when calculating the guideline sentence.

## II.  §3553(a) Factors supporting a 180-month total sentence

### a. Medical history and background of Mr. Sokel

Mr. Sokel's life has been marked by profound adversity from an early age. His challenges began at birth, as he was born with physical deformities, cognitive impairments and an extra chromosome—a rare genetic condition known as "47, XYY karyotype" or "Jacob's syndrome."

Before the age of five, Mr. Sokel underwent multiple procedures to correct a clubfoot, marking the start of a long and arduous medical journey. He has spent far more time in hospitals than anyone should have to, and yet his need for treatment and relief from pain continues to this day.

Mr. Sokel is physically disabled. His medical history includes a seizure disorder, a blood condition called polycythemia, and chronic joint issues, such as bursitis and arthritis. He also has scoliosis and a serious back injury, for which a portion of his spine has been fused. These conditions have caused him to endure chronic pain for most of his life. Over the years, he has been prescribed various medications to manage this pain, and in 2018, he underwent a spinal cord implant procedure in an effort to alleviate his chronic back pain.

In addition to these physical challenges, Mr. Sokel's rare genetic disorder has posed extraordinary difficulties. Jacob's syndrome resulted in the development of male

genitalia along with female breast tissue. Despite these physical manifestations, Mr. Sokel did not receive an official diagnosis until he was 37 years old. This lack of diagnosis meant that throughout his childhood, adolescence, and much of his adult life, Mr. Sokel remained unaware of the underlying cause of his differences.

Mr. Sokel's struggles with gender identity were compounded by growing up in an era when such issues were poorly understood, rarely acknowledged, and often outright ignored. At a time when societal norms rigidly defined gender and dismissed deviations from these standards, Mr. Sokel was left to navigate his unique challenges in isolation. The physical manifestations of Jacob's syndrome—male genitalia alongside female breast tissue—set him apart in ways that caused confusion, shame, and stigma. Without a diagnosis or access to medical and psychological support, Mr. Sokel was deprived of the tools necessary to make sense of his experiences and cope with the associated emotional turmoil. In an environment where gender identity discussions were taboo, he faced misunderstanding and discrimination from others, further exacerbating his sense of isolation and internal conflict. This lack of acceptance and recognition not only delayed crucial medical intervention but also contributed to a lifetime of emotional pain, self-doubt, and an inability to fully embrace his identity.

    b. **Mr. Sokel's developmental years.**

        i. **Family life.**

Mr. Sokel has a positive view of his upbring despite his family having its own unique challenges.

While Mr. Sokel didn't directly face abuse at home, he was a witness to it. He watched his father, struggle for years with alcohol and physically abused Mr. Sokel's mother.

Additionally, his mother had unconventional views on nudity. Specifically, she allowed Mr. Sokel and his sister regularly play naked well into the ages of puberty. While Mr. Sokel does not blame his behaviors on his upbringing, it cannot go without mentioning that his lack of guidance on bodily autonomy and other cognitive defects certainly led to serious errors in judgement and thinking patterns that ultimately led to him being before this Court.

Mr. Sokel's mother has since passed away which was very difficult for him because she was instrumental in throughout his life in helping through his educational challenges and navigate his medical needs. He maintains contact with his father who lives in Owatonna, Minnesota. Prior to his arrest, Mr. Sokel would help his father with transportation to and from his father's medical appointments at the V.A.  Mr. Sokel no longer has contact with his sister as the result of this offense. The loss of this relationship is incredibly difficult for him.

Mr. Sokel has found companionship through a long-term friendship with Andrea Heaton. They have known each other for over 20 years and have been each other's emotional support.

This is a positive relationship for Mr. Sokel, as they have had similar struggles and can relate to one another. In his friendship with Ms. Heaton, Mr. Sokel has demonstrated his kindness, generosity, and ability to think of the well-being of others. Being away from

Ms. Heaton has been burdensome on both of them, as they have relied on each other for a long time. As a result of Mr. Sokel's incarceration, his father has had to help Ms. Heaton in Mr. Sokel's place. Mr. Sokel has great concern for Ms. Heaton if is father is not around to help her.

    ii. **Education**

Mr. Sokel has learning disabilities that significantly impact his comprehension and retention of information, making his schooling experience difficult. He attended a variety of schools in an attempt to find a specialized learning program to address his unique needs. However, throughout this process, Mr. Sokel faced severe bullying from both students and staff, some of whom used corporal discipline. As a result of his learning disabilities, Mr. Sokel was held back two grade levels.

As a fourth grader, he was sexually assaulted by an eight-grade student. During his teenage years, Mr. Sokel experienced additional challenges due to early breast development, which was both confusing for him and made him a target for bullying and abuse by his peers. These challenges compounded his emotional distress.

The culmination of his difficult educational experiences and the emotional toll from sexual abuse, bullying, and physical changes led Mr. Sokel to have a breakdown, resulting in his placement in a psychiatric ward for a year. After his release from the hospital, he returned to school and, despite these hardships, was able to earn his high school diploma at the age of 21. His cognitive testing reflects intellectual functioning in the low-average range, with a full-scale IQ of 84, indicating that he faced significant challenges, particularly with verbal reasoning and processing speed. These cognitive

difficulties, combined with the trauma from his educational experiences, have shaped his complex life history.

### iii. Work history.

Despite his challenges, Mr. Sokel has always done his best to work. Mr. Sokel has had a varied work history, marked by both hands-on labor and technical skills development. He began his vocational journey at a school in New Marbolo, MA, where he stayed in a main dorm and spent time at a friend's farm. He worked on the dairy farm, initially performing manual labor like shoveling manure and later progressing to milking cows and learning to care for the farm. Unfortunately, funding for the vocational program ran out, and he attempted to continue working on the farm but could afford to stay there and returned home.

After returning to Illinois, Mr. Sokel found work as a cashier and then started driving a truck. He learned that he needed a CDL after a cop informed him at a stop, prompting him to study hard to pass the written test, which took four attempts. With the help of a friend, he learned the roads and eventually began driving a heavy-duty tow truck. He later worked at a gas station until it was sold.

A friend introduced him to computers, and he taught himself how to repair them without attending formal schooling. Eventually, he moved to Minnesota, where his mother arranged for him to undergo a medical evaluation at the Mayo Clinic for Mr. SokelDI eligibility and was able to secure his Mr. SokelDI benefits.

Mr. Sokel then participated in job training through ABC and a workforce center, where he received assistance in finding a job as a computer repair technician. After job

shadowing, he gained confidence in the role. However, as business slowed at the company, he transitioned to working independently, starting his own computer repair business. He took on large projects, such as repairing a 300-pound printer, but an injury resulting in three blown vertebrae and a fused spine forced him to discontinue the business.

Despite the setback, the client continued to repair computers from of his apartment. During the pandemic, he made some income by selling refurbished laptops online, though the earnings were modest at $20 to $25 per unit. Over time, S.S lost interest in the business and began experiencing difficulty with memory retention, which further impacted his ability to sustain his work.

### c. Character and rehabilitation potential.

Mr. Sokel is loyal, dependable, and soft-spoken. Additionally, despite all of his challenges, he has shown perseverance in moving forward, such as getting his high school diploma at 21 despite his learning challenges, miserable peer experiences, and extended hospital stay. Mr. Sokel also showed persistence in becoming employable, and even when on Mr. SokelDI he found ways to supplement his income.

At 61 years old, he is coming to terms with his magnitude of his actions and seeking professional support to help him live with his new reality. Mr. Sokel remains optimistic that with the right support, he can still move forward despite a lengthy incarceration from which he will not be released from until, at best, his mid-70s. Until he receives the proper treatment for his offense, he has been attending group therapy sessions at the Sherburne County Jail, including cognitive behavioral therapy, dialectical behavioral therapy, trauma

informed group therapy, and a CBT group therapy. These classes have not been easy for him because he does not always understand the concepts that are being taught. However, the therapists recognize his challenges and his desire to learn and spend extra time working with him outside of groups. He understands his struggles better now and recognizes that with the right treatment he can overcome his mental health battles.

In addition to working on his mental health, Mr. Sokel continues to pursue educational opportunities through the NCIC Schoolhouse platform, which is available to inmates. To date, he has successfully completed 59 educational programs. Furthermore, he is currently enrolled in a correspondence course to learn how to repair hand radios, a skill he has had a long interest in developing.

> **d. The downward variance will reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense while providing Mr. Sokel with needed support in finding appropriate treatment and resources.**

First, Mr. Sokel recognizes the seriousness of his actions and the offenses for which he has pled guilty. He does not take lightly the gravity of the offense and feels immense remorse for the harm he caused. However, a guideline sentence does not reflect the totality of the circumstances nor the mitigating factors in his life. Such a lengthy sentence risks over-punishing a man who, despite this offense, has demonstrated an ability to be a kind-hearted, respectful neighbor and citizen. The crime, while serious, must be viewed in context of Mr. Sokel's history, his immediate acceptance of responsibility, and his sincere efforts to seek treatment. Through seeking proper treatment, Mr. Sokel recognizes upbringing and his pattern of untreated and ignored medical disorders contributed to his

offense. He is now dedicated to remaining in the proper treatment to rebuild his life. A two decade-long sentence is excessive when considering that a still substantial period of imprisonment of fifteen years would still appropriately serve the goals of punishment, deterrence, and respect for the law. A lesser sentence can reflect the seriousness of the offense while still giving Mr. Sokel and opportunity to correct his life.

Further, Mr. Sokel has already taken the crucial first step by acknowledging his mistake and pleading guilty. Mr. Sokel was quick to recognize his actions and cooperated in accepting responsibility. He is now eager to accept the treatment he needs and escape the mental and physical confusion that has plagued him since birth. He is open to any treatment program that can aid him in correcting his path. He recognizes that this offense is a result of poor decision making and the failure to obtain proper treatment. A sentence of 180 months will give Mr. Sokel the opportunity to continue to accept responsibility while healing from his own traumas.

**III.    Factors supporting transfer to a medical facility.**

Mr. Sokel's medical history requires meaningful professional support. While incarcerated at the Sherburne County Jail since April 19, 2024, Mr. Sokel has faced significant challenges in receiving adequate medical care for his complex conditions.

Mr. Sokel suffers from chronic joint issues, including bursitis and arthritis, as well as scoliosis, for which a portion of his spine has been fused. These conditions cause severe, ongoing pain that significantly impairs his ability to perform daily activities. To manage this pain, Mr. Sokel depends on a back stimulator, a medical device that delivers targeted electrical impulses to his spine, providing effective pain relief and reducing his

reliance on high doses of pain medication. The back stimulator requires regular calibration to function properly. Without it, Mr. Sokel's pain becomes unmanageable, leading to a diminished quality of life, reduced mobility, and worsening physical and mental health. Although it took months for the jail to approve Mr. Sokel's use of the stimulator, it remains a critical part of his pain management. Mr. Sokel fears that, upon entering the BOP, he will be denied access to this essential device, leaving him with no effective means to control his chronic pain. Such a denial would result in unnecessary suffering, severely limit his daily functioning, and exacerbate his underlying medical conditions.

In addition to his chronic pain, Mr. Sokel requires testosterone therapy to manage his Jacob's Syndrome. Without this therapy, his hormone levels drop to near zero, causing significant physical and psychological health issues. A testosterone level of zero in males leads to muscle loss, increased body fat, fatigue, weakened bones (osteoporosis), heightened risks of cardiovascular disease, unfavorable cholesterol levels, and metabolic problems such as insulin resistance and weight gain. It also causes psychological effects, including depression, irritability, and cognitive impairments, such as memory loss. Mr. Sokel regularly complains about his memory loss. Despite blood tests confirming Mr. Sokel's low hormone levels, the jail has refused to provide him with testosterone therapy, erroneously assuming it is used solely as a sexual enhancement drug. This denial has left Mr. Sokel vulnerable to the health risks associated with untreated hormone deficiencies.

Mr. Sokel also has a history of temporal lobe seizures, light sensitivity, migraines, and a condition causing one pupil to appear larger. These symptoms, combined with his

prior use of medications like Tegretol and Topamax (prescribed for seizure management and weight loss), require careful medical oversight. Mismanagement of his medications at the jail has resulted in adverse effects, including light-headedness and fainting. There were at least two documented instances where Mr. Sokel fainted due to improper administration of Topamax, highlighting the jail's failure to ensure accurate dosing. Additionally, the jail has denied him the ability to have darkened glasses which help with the light sensitivity.

A medical facility is essential for addressing Mr. Sokel's complex medical needs safely and effectively. Trained professionals in such a facility can closely monitor his symptoms, administer his medications correctly, and intervene promptly in the event of complications, such as migraines or seizure-like symptoms. Proper medical oversight is especially critical given Mr. Sokel's history of severe weight fluctuations due to his hormone levels, chronic pain, and neurological conditions. Without consistent, informed care, Mr. Sokel risks serious setbacks, including uncontrolled pain, the recurrence of seizures, worsening neurological symptoms, and further harm from medication mismanagement. Access to a medical facility is not only necessary to prevent these risks but also to ensure that Mr. Sokel receives the specialized care required to maintain his health and well-being.

The BOP provides specialized, long-term medical care for male inmates in Rochester, Minnesota. The Federal Medical Center Rochester (FMC Rochester) is designated and accepts inmates of all security classifications. Mr. Sokel's father, whom he has maintained consistent relationship with, resides in Owatonna, Minnesota. This is less

than an hour commute. Ms. Heaton resides in Blooming Prairie, which is also less than an hour commute. Accordingly, Mr. Sokel respectfully requests the Court to recommend his sentence be served at FMC Rochester. At FMC Rochester Mr. Sokel may receive the medical care he needs while remaining close to his support system.

IV.     **Financial Obligations.**

Mr. Sokel lacks the ability to pay a fine in the range of $50,000 to $250,000 and respectfully requests that the Court refrain from imposing a fine. Similarly, he acknowledges that, pursuant to 18 U.S.C. § 3014 and 2259A(a)(3), the Court is required to impose a $5,000 special assessment under the Justice for Victims of Trafficking Act and may impose up to $50,000 under the Amy, Vicky, and Andy Victim Assistance Act of 2018.

However, before imposing any fine or the referenced assessments, the Court should first consider the factors outlined in 18 U.S.C. §§ 3553(a) and 3752. As noted in the PSR and reiterated here, Mr. Sokel does not have the ability to pay a fine or either of these assessments. He is indigent and will remain so. Prior to his arrest, Mr. Sokel received $798.00 per month in Mr. SokelDI benefits. By the time of his release, he will likely be in his mid to late 70s, with no meaningful ability to pay a fine or special victim assessment. Given these circumstances, any financial resources should not be depleted by a fine or victim assessment. Additionally, may be required to pay restitution to the victim of his crime.

Mr. Sokel respectfully requests that the Court not impose a fine or the general victim-related assessments.

V.        **Supervised Release.**

Mr. Sokel acknowledges that he is advocating for a sentence below the recommended guidelines, understanding that the Court has the option of using a lengthy supervised release period as an additional tool to ensure public safety and provide the necessary resources to support his successful reintegration into the community.

Supervised release serves as a critical mechanism to monitor Mr. Sokel's behavior and ensure he complies with the conditions set by the Court. It provides ongoing oversight, including regular check-ins with a probation officer, treatment, mental health counseling, and other rehabilitative services that could greatly benefit Mr. Sokel as he transitions back into society. This continued supervision allows the Court to closely track his progress and intervene, if necessary, thus ensuring that public safety is maintained without the need for an excessive prison sentence. Given that Mr. Sokel is committed to addressing his issues and working toward rehabilitation, supervised release offers a viable alternative to a lengthy incarceration, allowing him to demonstrate his ability to live a law-abiding life while receiving the support needed to do so.

## CONCLUSION

Mr. Sokel respectfully requests that the Court vary downward from the guideline imprisonment range of 210–262 months and impose a term of imprisonment of 180 months. Furthermore, he asks that his sentence be served at FMC Rochester, a facility capable of providing the specialized medical care his condition requires. FMC Rochester's proximity to Owatonna and Blooming Prairie would enable Mr. Sokel to maintain essential connections with his support system, including his father and Ms. Heaton. Most

importantly, the facility will provide the medical care Mr. Sokel requires to mitigate his chronic pain and come to terms with his diagnosis. By granting this request, the Court would ensure that Mr. Sokel receives appropriate medical care while allowing him to remain near his family and support network, fostering his rehabilitation and well-being during his term of imprisonment.

**THE JAB FIRM**

| | |
|---|---|
| Dated: January 20, 2025 | */s/ Jill A. Brisbois* |
| | Jill A. Brisbois |
| | Attorney ID #345477 |
| | 150 Fifth Street, STE 1850 |
| | Minneapolis, MN 55402 |
| | (651) 209-7798 |
| | jill@thejabfirm.com |